**ROBERTS–GORDON, LLC, Plaintiff,**

v.

**SUPERIOR RADIANT PRODUCTS, LTD., Defendant.**

No. 99–CV–90A.

United States District Court,
W.D. New York.

Feb. 25, 2000.

Buchanan Ingersoll, P.C., Linda H. Joseph, of counsel, Buffalo, New York, for plaintiff.

Sullivan & Oliverio, Richard T. Sullivan, of counsel, Buffalo, New York, for defendant.

## ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Leslie G. Foschio pursuant to 28 U.S.C. § 636(b)(1)(B), on March 22, 1999. On February 4, 2000,

Magistrate Judge Foschio filed a Report and Recommendation, recommending that defendant's motion to dismiss be denied and plaintiff's cross-motion for discovery be dismissed as moot. Alternatively, the Magistrate Judge recommended that plaintiff's cross-motion for discovery be granted, defendant's motion to dismiss should be continued and that plaintiff's motion for sanctions be denied.

The Court has carefully reviewed the Report and Recommendation, the record in this case, and the pleadings and materials submitted by the parties. No objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, defendant's motion to dismiss is denied and plaintiff's cross-motion for discovery is dismissed as moot. Alternatively, plaintiff's cross-motion for discovery is granted, defendant's motion to dismiss is continued and plaintiff's motion for sanctions is denied. The case is referred back to the Magistrate Judge for further proceedings.

IT IS SO ORDERED.

## REPORT and RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### DECISION and ORDER[1]

#### JURISDICTION

This case was referred to the undersigned on March 22, 1999 by the Honorable Richard J. Arcara for report and recommendation on dispositive motions. It is currently before the court on Defendant's motion to dismiss filed March 16, 1999 (Docket Item No. 3), Plaintiff's cross-motion for discovery filed April 19, 1999 (Docket Item No. 7), and Plaintiff's motion

---

**1.** This matter is before the court for a Report and Recommendation on Defendant's motion to dismiss based on lack of personal jurisdiction and for a Decision and Order on Plaintiff's cross-motion for discovery and motion for sanctions pursuant to Fed.R.Civ.P. 11. As the subject matter of Defendant's motion closely relates to Plaintiff's cross-motion for discovery and motion for sanctions, the court addresses the motions together to facilitate judicial consideration.

for sanctions filed May 13, 1999 (Docket Item No. 16).

## BACKGROUND

Plaintiff, Roberts–Gordon, LLC, successor to Roberts–Gordon, Inc., commenced this action on February 4, 1999, alleging Defendant, Superior Radiant Products, Ltd., infringed on Plaintiff's rights in its trademarks names, marks and logos by using them as "metatags" on Superior's Internet web site. Four causes of action are asserted in the Complaint including (1) trademark infringement in violation of the United States trademark act ("the Lanham Act"), 15 U.S.C. §§ 1051–1127 and New York General Business Law § 360–k (McKinney 1999), (2) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), (3) unfair competition in violation of New York common law, and (4) dilution of the distinctiveness of Plaintiff's trademark name, mark and logo in violation of the United States Trademark Dilution Act ("the Federal Dilution Act"), 15 U.S.C. § 1125(c) and New York's antidilution law, New York General Business Law § 360 *et seq.*

By stipulation filed on March 5, 1999, the parties set March 15, 1999 as the deadline for Defendant's answer. On March 16, 1999, Defendant filed a motion to dismiss the complaint based on lack of personal jurisdiction, supported by the Affidavit of Eric Willms ("Willms Affidavit I") and a Memorandum of Law (Docket Item No. 4) ("Defendant's Memorandum of Law"). In opposition to the motion to dismiss, Plaintiff filed on April 19, 1999, a cross-motion for discovery limited to jurisdiction, accompanied by the Affidavit of Paul Dines (Docket Item No. 9) ("Dines Affidavit"), and a Memorandum of Law (Docket Item No. 8) ("Plaintiff's Memorandum of Law"). In these supporting papers, Plaintiff advised the court that it had served Defendant with a motion under Fed.R.Civ.P. 11 alleging Defendant's motion to dismiss was based on allegedly false and misleading factual statements in the Willms Affidavit I; however, Plaintiff in accordance with Fed.R.Civ.P. 11(c)(1)(A), did not intend to file the motion for 21 days to provide Defendant with an opportunity to withdraw the motion.

On April 30, 1999, Defendant filed another affidavit by Eric Willms (Docket Item No. 11) ("Willms Affidavit II"), and a reply Memorandum of Law (Docket Item No. 12) ("Defendant's Reply Memorandum of Law"), in further support of the motion to dismiss. On May 4, 1999, Plaintiff filed a Sur-reply Affidavit by Linda H. Joseph, Esq., in further opposition to the motion to dismiss (Docket Item No. 13) ("Joseph Sur-reply Affidavit"). On May 7, 1999, Defendant filed an attorney affidavit in opposition to the cross-motion for discovery (Docket Item No. 15) ("Sullivan Affidavit I"). Plaintiff filed, on May 13, 1999, an attorney affidavit in further support of discovery (Docket Item No. 17) ("Joseph Discovery Affidavit"),

As Defendant did not withdraw the motion to dismiss, on May 13, 1999, Plaintiff moved for sanctions. Defendant filed another affidavit by Mr. Sullivan in opposition to the motion for sanctions on May 28, 1999 ("Docket Item No. 20") ("Sullivan Affidavit II"), attesting to the truthfulness of the factual statements made in support of the motion to dismiss. A further affidavit by Eric Willms in opposition to sanctions was filed by Defendant on June 1, 1999 (Docket Item No. 21) ("Willms Affidavit III"). On June 4, 1999, Plaintiff filed a memorandum of law in support of sanctions (Docket Item No. 22) ("Plaintiff's Memorandum of Law in Support of Sanctions"). Informal oral argument was conducted by telephone conference call on January 28, 2000.

Based on the following, Defendant's motion to dismiss should be DENIED as personal jurisdiction over Defendant exists pursuant to § 302(a)(3)(ii) of the New York Civil Practice Law and Rules, and Plaintiff's cross-motion for limited discovery is DISMISSED as moot. Alternatively, Defendant's motion to dismiss should be con-

tinued pending limited discovery on the jurisdictional question and Plaintiff's cross-motion for discovery GRANTED. Plaintiff's motion for sanctions is DENIED.

### FACTS[2]

Plaintiff Roberts–Gordon, LLC, successor to Roberts–Gordon, Inc. ("Roberts–Gordon"), a Delaware corporation, maintains its principal place of business at 1250 William Street, Buffalo, New York. Since the 1960s, Roberts–Gordon has used registered trademarks in connection with its business of manufacturing and selling low intensity infrared heating equipment throughout the United States and elsewhere, including New York. Two such trademarks include "GORDON–RAY" registered March 28, 1967 (U.S.Reg. No. 826,-409) and "CO–RAY–VAC" registered September 27, 1966 (U.S.Reg. No. 815, 870). Roberts–Gordon asserts its GORDON–RAY and CO–RAY–VAC names, marks and logos ("trademarks") are "extremely well known" among infrared heating equipment customers such that Roberts–Gordon

owns valuable goodwill in its trademarks. Complaint, ¶ 11–12.

Defendant Superior Radiant Products, Inc. ("Superior"), a Canadian corporation, maintains its offices at 428 Millen Road, Unit 23, Stoney Creek, Ontario, Canada. Superior is also engaged in the manufacture and sale of low intensity infrared heating equipment. That Roberts–Gordon and Superior are competitors is undisputed. Both Eric Willms, President of Superior, and Timothy Seel, who has performed product design and engineering work for Superior in New York, were formerly employed by Roberts–Gordon.

According to Roberts–Gordon, it learned of the alleged trademark infringement when its Manager, Chairman and Chief Executive Officer, Paul Dines inputted Roberts–Gordon's registered trademarks GORDON–RAY and CO–RAY–VAC as keywords in an Internet search for Roberts–Gordon's web "site" and, instead, found a web site maintained by Superior located at *http://www.superiorradiant.com.*[3]

---

2. The fact statement is taken from the pleadings and motion papers filed in this action.

3. The Internet is a system of thousands of computer networks connected by telecommunications lines, with each network comprised of two or more computers connected to share information. Such information may be viewed by anyone with access to a computer that is connected to the Internet. No one organization owns or controls the Internet; rather, each government, company and organization on the Internet is responsible for maintaining its own network. The World Wide Web or "web" is part of the Internet which consists of a huge collection of documents stored on host or server computers around the world. A web page is a document on the web created by computer data files written in Hypertext Markup Language ("HTML") which may contain such information as text, pictures, sounds, audio and video recordings and links to other web pages. Web pages are generally created to share business or personal information with people around the world who access such information through the Internet. The term "web site" refers to a collection of web pages maintained by a college, university, government agency, company or individual. Each web site is assigned an Internet address consisting

of a top level "domain" indicating the type of organization (*e.g.*, ".com" for commercial organizations or ".edu" for educational organizations), and a second level domain which usually describes the nature of the organization. Although entering an organization's complete Internet address is the easiest way to locate its corresponding web site, if the exact address is not known, an Internet user can "surf" or "navigate" the Internet by using a "search engine" which is an Internet tool that quickly searches millions of web pages for certain "keywords" inputted by the user. The search engine matches the keywords to web page domains, text and "metatags" which are HTML codes assigned to a particular web page by its creator that are intended to describe the contents of the web page. Every keyword match is a "hit" and the search engine lists all hits, ranked according to the number of hits per each found web page. Although the metatags assigned to web pages assist keyword searches, the metetags do not necessarily appear in the text of a web site that is a hit. Web sites can be either "interactive" or passive. An interactive web site permits the user to exchange information with the host computer including sending electric "e-mail" messages and placing orders for products and services. Interactive web

Roberts–Gordon determined that the words "Gordon–Ray," "Gordonray," and "corayvac" were among the metatags assigned to Superior's web site.

By letter dated October 23, 1998, Roberts–Gordon requested Superior immediately cease all further use of Roberts–Gordon's trademarks as metatags in connection with Superior's web site and provide written confirmation of the web site change by October 30, 1998. Roberts–Gordon also demanded an accounting with respect to the alleged infringement and reimbursement of any related unlawful profits. Superior responded by letter dated October 29, 1998, advising Roberts–Gordon that the challenged metatags had been inadvertently placed in Superior's meta index file and had, as of October 26, 1998, been deleted. Superior also asserted it was unable to attribute any sales to its web site advertising, but indicated its willingness to consider any evidence Roberts–Gordon may have of such damages.

According to Roberts–Gordon, Superior never ceased using the trademarks as metatags for its web site and that an Internet search on March 24, 1999, using Roberts–Gordon's trademarks led to Superior's web site. Superior asserted that such results stemmed from the use of "old" or "cache" memory in a specific computer which was previously used to access Superior's web site. Roberts–Gordon disputes Superior's explanation because an Internet search using Roberts–Gordon's trademarks, performed on a computer that was "formatted" on April 30, 1999 and not used to access Superior's web site, also led to Superior's web site on May 1, 1999.

Superior has moved to dismiss the Complaint asserting that this court lacks personal jurisdiction based on its asserted lack of any basis to support long-arm juris-

diction in New York. In opposition to the motion, Roberts–Gordon submitted evidence purportedly demonstrating sufficient contacts to subject Superior to personal jurisdiction in New York. Roberts–Gordon also cross-moved for discovery limited to the jurisdiction issue should the court find, based on the pleadings and moving papers, the absence of personal jurisdiction over Superior.

Superior filed an affidavit by its President, Eric Willms, in support of dismissal stating that Superior has no "end-user" customers in New York, that its distributors in New York are not authorized to contract on behalf of Superior, and generally asserting the lack of sufficient contacts with New York to support a finding that Superior is doing business in New York. Roberts–Gordon moved for sanctions against Superior arguing Superior's assertions are false and misleading.

### *DISCUSSION*

#### *1. Personal Jurisdiction*

■ In this case, the parties do not dispute that Superior is a foreign corporation incorporated under the laws of Ontario, Canada, where it maintains its principal place of business. Personal jurisdiction over a non-domiciliary defendant in a diversity or federal question case, like the instant action, is determined by reference to the law of the state in which the court sits, unless otherwise provided by federal law. *Hoffritz Cutlery, supra*, at 57; *Vendetti v. Fiat Auto S.p.A.*, 802 F.Supp. 886, 889 (W.D.N.Y.1992) (citing cases). As federal trademark laws do not provide for nationwide service of process over a non-domiciliary defendant, this court can exercise personal jurisdiction over Superior only to the extent permitted by New York

sites may also contain "hyperlinks" which are highlighted text or images that, when selected, permit the user to view other, related web pages regardless of their server location. In contrast, a passive web site is simply a non-interactive advertisement that does little more than make information available to the user.

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1044–45 (9th Cir.1999); *Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295, 297–98, nn 1 and 2 (S.D.N.Y.1996); *See, e.g.*, Paul Whitehead and Ruth Maran, Internet and World Wide Web Simplified (2d ed.1996) at 2–24.

law. *American Network, Inc. v. Access America/Connect Atlanta, Inc.*, 975 F.Supp. 494, 496 (S.D.N.Y.1997) (citing *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.*, 647 F.2d 200, 204 (D.C.Cir.1981)).

The New York laws relevant to the instant case are Sections 301 and 302 of New York's Civil Practice Law and Rules ("N.Y.CPLR"), *see* N.Y.Civ.Prac.L. & R. § 301 *et seq.* (McKinney 1990 & 1999 Supp.), as interpreted and applied by New York courts. Specifically, a court has personal jurisdiction over a foreign defendant under N.Y. CPLR § 301 if the defendant "is engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of its 'presence' in this jurisdiction." *Delagi v. Volkswagenwerk AG of Wolfsburg, Germany*, 29 N.Y.2d 426, 328 N.Y.S.2d 653, 278 N.E.2d 895, 896 (1972). Jurisdiction over a foreign defendant may also lie in New York under New York's long-arm statute, N.Y. CPLR § 302 based upon the tortious act of a non-domiciliary who does not transact business in New York. *Bensusan Restaurant Corporation v. King*, 126 F.3d 25, 27 (2d Cir.1997).

■■■ A plaintiff may defeat a motion to dismiss brought prior to discovery by making a *prima facie* showing of jurisdiction either through "legally sufficient allegations of jurisdiction" in the pleadings, *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990), or through its own affidavits and supporting materials. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). In deciding a motion to dismiss for lack of personal jurisdiction, the court has discretion to proceed either upon written submissions or through a full evidentiary hearing on the merits. *Marine Midland, supra.* Absent discovery or a full evidentiary hearing, the pleadings and affidavits are construed, and any ambiguity resolved, in favor of the plaintiff. *Hoffritz for Cutlery, Inc. v.*

*Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985); *Marine Midland, supra*, at 904. Such a *prima facie* showing does not, however, preclude the ultimate requirement that the plaintiff establish personal jurisdiction by a preponderance of the evidence either at a pretrial evidentiary hearing or at trial. *Id.* Nevertheless, until an evidentiary hearing is held, a *prima facie* showing of personal jurisdiction is sufficient to withstand a motion to dismiss. *Id.* This principle "remains true notwithstanding a controverting presentation by the moving party." *Hoffritz for Cutlery, supra*, at 57.

■■■ In support of the motion to dismiss, Superior's President, Eric Willms, submitted an affidavit in which he avers that Superior has no office, employees, bank accounts or any other assets in New York, nor does it have any authorized agents or manufacturers' representatives in New York and does not do business in New York either directly or indirectly through distributors who distribute products to customers in New York or through its Internet web site. Defendant's Memorandum of Law at 4–5. Accordingly, Superior urges this court to find Superior is not present in New York and thus is not subject to personal jurisdiction in the state. Defendant's Memorandum of Law at 6. In opposition, Roberts–Gordon maintains there is personal jurisdiction over Superior either under N.Y. CPLR § 301 based on Superior's "doing business" in New York or pursuant to New York's long-arm jurisdiction statute, N.Y. CPLR § 302. Plaintiff's Memorandum at 13.

As no discovery relative to the issue of personal jurisdiction has yet been conducted, Roberts–Gordon, at this point, need make only a *prima facie* showing based on the Complaint and affidavits that personal jurisdiction exists. Although Superior initially argued that Roberts–Gordon was required to allege in the Complaint specific facts for *in personam* jurisdiction, Superior conceded during oral argument that such an allegation is not required. Despite some inconsistency as to the basis for

jurisdiction between what Roberts–Gordon alleges in the Complaint and contends in opposition to the instant motion, the court finds the Complaint and affidavits establish a *prima facie* showing of personal jurisdiction over Superior based on long-arm jurisdiction under N.Y. CPLR § 302(a)(3)(ii). Alternatively, whether a sufficient showing of personal jurisdiction under N.Y. CPLR §§ 301 or 302(a)(3)(i) has been made cannot be determined without limited discovery.[4] The court also finds there is no basis for personal jurisdiction over Superior under N.Y. CPLR §§ 302(a)(1) or 302(a)(2) upon this record.

### A. *N.Y. CPLR § 301*

Roberts–Gordon argues Superior is generally present in New York as Superior is "doing business" in New York both through its distributors whom Roberts–Gordon assert are, based on information in Superior's web site, "authorized representatives," and the "wide range" of Superior's business activities as stated in exhibits attached to the affidavit of Paul Dines, Manager, Chairman and Chief Executive Officer of Roberts–Gordon. Plaintiff's Memorandum of Law at 2. Superior maintains that neither its web site nor the presence of distributors in New York is sufficient to support a finding personal jurisdiction based on "doing business" in New York. Defendant's Memorandum of Law at 2.

A foreign corporation is amenable to suit in New York under CPLR § 301 "if it has engaged in such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this [state] is warranted," *Landoil Resources v. Alexander & Alexander Services, Inc.,* 77 N.Y.2d 28, 563 N.Y.S.2d 739, 565 N.E.2d 488, 490 (1990) (citing cases), even if the cause of action is unrelated to the defendant's New York activities. *Jazini v. Nissan Motor Company, Inc.,* 148 F.3d 181, 184 (2d Cir. 1998) (citing *Taca Int'l Airlines, S.A. v. Rolls–Royce of England, Ltd.,* 15 N.Y.2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329, 331 (1965)). The test for whether a defendant is "doing business" in New York is "simple" and "pragmatic," and varies depending on the facts particular to each case. *Landoil Resources, supra,* at 33, 565 N.E.2d 488, 563 N.Y.S.2d 739 (citing cases). For jurisdiction to exist under § 301, the court must find the corporation is present in New York " 'not occasionally or casually, but with a fair measure of permanence and continuity.' " *Landoil Resources, supra,* at 33–34, 565 N.E.2d 488, 563 N.Y.S.2d 739 (quoting *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 115 N.E. 915, 917 (1917)). Further, "the quality and nature of the corporation's contacts with the State" must be sufficient such that it is "reasonable and just according to traditional notions of fair play and substantial justice" to require the defendant to defend the action here. *Laufer v. Ostrow,* 55 N.Y.2d 305, 449 N.Y.S.2d 456, 434 N.E.2d 692, 694 (1982) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

"Mere solicitation" of business in New York, such as advertising, does not, without more, constitute the requisite "systematic and regular course of business" sufficient to subject a defendant to personal jurisdiction in New York. *Delagi v. Volkswagenwerk AG of Wolfsburg, Germany,* 29 N.Y.2d 426, 328 N.Y.S.2d 653, 278 N.E.2d 895, 896 (1972). Nor have "mere sales" of a product in New York, even if substantial, ever been held sufficient to render a defendant amenable as doing business to suit in New York. *Delagi, supra,* at 898. Further, where personal jurisdiction is asserted based on the presence of the defendant's representatives or agents in New

---

4. Despite Superior's contention that the documents submitted by Roberts–Gordon in an attempt to establish that Superior is present in New York demonstrate that limited discovery on the issue of jurisdiction is not necessary, Sullivan Affidavit, ¶ 5, this court has authority to order discovery limited to the issue of jurisdiction. *See Daniel v. American Board of Emergency Medicine,* 988 F.Supp. 127, 149 (W.D.N.Y.1997).

York, more than an agency relationship must be established. *Landoil Resources, supra,* at 492.

In this case, the court is unable to determine based on Roberts–Gordon's submissions whether Superior is engaged in a continuous and systematic course of 'doing business' in New York that supports finding Superior is present here for purposes of N.Y. CPLR § 301. *Landoil Resources, supra,* at 490. In opposition to Superior's motion, Roberts–Gordon submitted an affidavit which states Superior directly sold its de-icing products to Process Technologies, Inc. ("PTI"), in Orchard Park, New York, for installation and use at the Buffalo International Airport and Rochester Airport in New York. Dines Affidavit, ¶ 7; Letter dated June 11, 1997, by Kevin Merritt, Vice President of Finance for Superior, Exhibit B to Dines Affidavit. Superior's products were also installed at Moyers Corners Fire Station # 2 in Liverpool, New York. Dines Affidavit, ¶ 9; Letter dated November 10, 1998, by Teresa L. Fogarty of William P. Fogarty Co., Inc., Representative of Roberts–Gordon, Exhibit D to Dines Affidavit. Dines also explains that Superior's web site, which instructs Internet browsers to contact Superior for its nearest authorized representative, demonstrates that Superior's distributors are representatives who are authorized to contract on Superior's behalf. Dines Affidavit, ¶ 10; Print–Out of Superior's Web Site dated March 24, 1999, Exhibit E to Dines Affidavit.

Dines further asserts he was present at the deposition of Ronald Glina, a non-party witness in a prior litigation, who testified that Superior has paid two individuals, Glina and Timothy Seel, for work performed for Superior in western New York, including assembling products and conducting business and product development. Dines Affidavit, ¶ 12. Both Glina and Seel worked for PTI when they performed such services for Superior. *Id.* Other documents establish that Superior has paid Seel for reviewing, on its behalf, various marketing materials in Western New York including product manuals used in direct competition with Roberts–Gordon, test results in preparation for marketing, submittals against industry standards, vendor specifications with regard to product designs and clearance/testing results to ensure compliance with infrared heater industry standards and editing "tech notes" used in advertising and sales materials. Dines Affidavit, ¶ 13. According to Dines, Glina testified that Superior attended the Buffalo International Airport demonstration of burners purchased from Superior through PTI. *Id.,* ¶ 14. Dines also refers to a letter received from Superior by one of Roberts–Gordon's distributors in this district, attempting to persuade the distributor to act as a representative for Superior's products in New York. Dines Affidavit, ¶ 16; Letter dated July 15, 1996 by Eric Willms to Niagara International Corporation, Inc., Exhibit H to Dines Affidavit.

In support of dismissal, Superior's President, Eric Willms, submitted an affidavit setting forth factual assertions on which dismissal for lack of jurisdiction is predicated. According to Willms, Superior is neither incorporated nor authorized to do business in New York. Willms Affidavit I, ¶ 3. Superior does not own or maintain an office, warehouse, terminal or other real property in New York. Willms Affidavit I, ¶ 4. Nor does Superior maintain any bank accounts or other property in New York. *Id.,* ¶ 5. Superior also has no employees, authorized agents or manufacturers' representatives in New York. *Id.,* ¶ 6. Further, according to Willms, Superior has no New York telephone numbers and does not advertise or engage in any promotional activities in New York. *Id.,* ¶ 7. Instead, Superior works with two independent distributors in New York who are not authorized to contract on behalf of the company, and who purchase products from Superior for sale to their customers. *Id.* As such, Superior maintains it has no end-user cus-

tomers in New York. *Id.* Superior also asserts that none of the alleged trademarks violations in the Complaint arise out of business transactions, tortious activity or any contract to supply goods or services on behalf of Superior in New York. *Id.,* ¶ 8.

Superior further argues that the allegations contained in the Dines Affidavit, even if true, fail to establish that Superior is doing business in New York through regular, systematic and permanent activities as required by prevailing case law. Defendant's Reply Memorandum of Law at 4. According to Superior, no New York distributors are listed on the Superior's web site and the fact that Superior manufactured burners pursuant to customer specifications that were installed in Buffalo International Airport's de-icing facility three years ago does not demonstrate Superior's regular, systematic and permanent presence in New York. *Id.* at 4–5. Further, Willms states in an affidavit in further support of dismissal that burners used on the Buffalo International Airport de-icing project were not produced in Superior's ordinary course of business as they were manufactured according to PTI's specifications, and that Superior has not performed any work on aircraft burners for PTI in New York or elsewhere since that job was completed in 1996. Willms Affidavit II, ¶ 7. Willms also maintains that Seel performed work for Superior as its consultant, rather than as Superior's employee. *Id.,* ¶ 8.

The court cannot determine on this record whether Superior's activities in New York amount to doing business in New York through regular, systematic and permanent activities such that Superior is amenable to jurisdiction under § 301 based on being "present" in New York. As discussed, mere sales or solicitations in New York are insufficient to meet this test. *Delagi, supra,* at 896, 898. Even assuming that Superior's distributors in New York are also Superior's authorized representatives, for purposes of making

contracts, such fact would be insufficient to find personal jurisdiction under § 301 absent a demonstration that the representatives were agents of Superior, *Landoil, supra,* at 492, which has neither been asserted nor established by Roberts–Gordon. Furthermore, Roberts–Gordon does not dispute Superior's assertion that the Buffalo International Airport project was performed in 1996 and there is no evidence as to when Superior was involved in the other New York projects, *i.e.,* the Rochester Airport de-icing facility and the fire station in Liverpool.

Accordingly, it is not possible to determine from the current record whether Superior's business activities in New York qualify as "regular, systematic and permanent." Although discovery may reveal evidence establishing Superior is doing business and thus present in New York for jurisdictional purposes, the court need not order discovery as personal jurisdiction over the instant claims can be established on another ground. Discussion, *infra,* at 215. Alternatively, if the District Judge disagrees with this finding, the motion to dismiss should be continued and the cross-motion for discovery limited to the jurisdictional issue should be granted.

## B. *N.Y. CPLR § 302*

A defendant not "doing business" in New York within the meaning of § 301, may nevertheless be subject to personal jurisdiction in New York under its "long-arm" jurisdiction statute based on a lesser showing of contacts with the state provided the cause of action arose from such contacts. *Bensusan Restaurant Corporation v. King,* 126 F.3d 25, 26 (2d Cir.1997); *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 763 (2d Cir.1983); *Daniel v. American Bd. of Emergency Medicine,* 988 F.Supp. 127, 229 (W.D.N.Y.1997). New York's long-arm statute, N.Y. CPLR § 302, provides in relevant part

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this

section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

(1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or

(2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

(3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or reasonably should expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y.Civ.Prac.L. & R. § 302 (McKinney 1990 & 1999 Supp.).[5]

If the exercise of personal jurisdiction over a non-domiciliary defendant may be based upon New York's long-arm statute, the court must also determine whether such exercise comports with due process requisites. *Bensusan Restaurant, supra*, at 27. The court examines whether such long-arm jurisdiction may be exercised over Superior under any provision of § 302.[6]

### 1. *N.Y. CPLR § 302(a)(1)*

Under § 302(a)(1), a court may exercise personal jurisdiction over any non-domiciliary who, either in person or through an agent, "transacts business within the state or contracts anywhere to supply goods or services in the state." N.Y.Civ.Prac.L. & R. § 302(a)(1) (McKinney 1990). A demonstration that a defendant "transacted business" in New York so as to be suable in New York under § 302(a)(1), provided that the cause of action arises from that transaction, requires considerably less contact with New York than a demonstration for purposes of finding jurisdiction under § 301 based on "doing business" in New York which subjects the defendant to suit on unrelated causes of action. *Beacon Enterprises, Inc., supra*, at 763. Specifically § 302(a)(1) "is a 'single act statute' and 'proof of one transaction in New York is sufficient to invoke jurisdiction, even [if] the [defendant] never enters the state, so long as the [defendant's] activities [in New York] were purposeful and there is a substantial relation-

---

**5.** That long-arm jurisdiction is expressly not available for defamation claims except under § 302(a)(1) is irrelevant. Such exception is predicated on New York public policy considerations based on the "facility with which a newspaper article or television broadcast may find its way into the state, although its origin may be far removed." N.Y.Civ.Prac.L. & R. § 302 note (McKinney 1999) (Practice Commentary 302:18). This fortuitous element is absent where, as in the instant case, a business creates a web site intended to be viewed internationally, including in New York State, by potential customers. Further, the tort of defamation includes an element of disparagement not required for a trademark infringement. Specifically, defamation is defined as "the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds or right-

thinking persons and to deprive him of their friendly intercourse in society." *Foster v. Churchill*, 87 N.Y.2d 744, 642 N.Y.S.2d 583, 665 N.E.2d 153, 157 (1996) (internal citations and quotations omitted). *Compare* 15 U.S.C. § 1114 (setting forth elements of trademark infringement under the Lanham Act). *See Saxholm AS v. Dynal, Inc.*, 938 F.Supp. 120, 126–27 (E.D.N.Y.1996) (holding non-domiciliary defendant in patent infringement case, which was "parallel" to trademark infringement, could be subject to personal jurisdiction in New York under either § 302(a)(2) or § 302(a)(3)).

**6.** A fourth provision for long-arm jurisdiction based on use of or to injury to property, N.Y. CPLR § 302(a)(4), has not been asserted as a possible basis for jurisdiction and, therefore, is not discussed.

ship between the transaction and the claim asserted.'" *Daniel v. American Bd. of Emergency Medicine,* 988 F.Supp. 127, 229 (W.D.N.Y.1997) (quoting *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40, 43 (1988), and citing *Beacon, supra,* at 764)) (bracketed text in original). The test for jurisdiction under § 302(a)(1) is, therefore, qualitative rather than quantitative and the inquiry should be designed to determine whether the "defendant has engaged in some purposeful activity in this State in connection with the matter in suit." *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68, 75 (1965). In other words, "[i]f the defendant has 'transacted business' in New York, it is suable on any cause of action that arises out of the transaction." *Hoffritz, supra,* at 58; See N.Y.Civ.Prac.L. & R. § 302(a)(1).

In this case, neither the Complaint nor Roberts–Gordon's submissions in opposition to dismissal can be fairly construed as alleging trademark infringement based on any commercial transaction, by Superior, in New York, nor does Superior so contend. Accordingly, § 302(a)(1) does not provide any basis for personal jurisdiction over Superior in this action. Further, discovery to determine if personal jurisdiction exists over Superior based on § 302(a)(1) need not be granted as Roberts–Gordon has not requested discovery on this ground.

### 2. *N.Y. CPLR § 302(a)(2)*

Under N.Y. CPLR § 302(a)(2), a court is permitted to exercise personal jurisdiction over any non-domiciliary who "in person or through an agent ... commits a tortious act within the state," provided the cause of action arises from the tortious act. *Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 27 (2d Cir.1997). "[I]n cases of trade-mark infringement and unfair competition, the wrong takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in

the misleading packages, but where the passing off occurs, *i.e.,* where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's." *Vanity Fair Mills, Inc. v. The T. Eaton Co.,* 234 F.2d 633, 639 (2d Cir.1956), *cert. denied,* 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76, *reh'g denied,* 352 U.S. 913, 77 S.Ct. 144, 1 L.Ed.2d 120 (1956). *See also Cottman Transmission Systems Inc. v. Martino,* 36 F.3d 291, 294 (3d Cir.1994) (holding tort of trademark infringement "occurs where the passing off occurs" and citing *Tefal, S.A. v. Products Int'l Co.,* 529 F.2d 495, 496 n. 1 (3d Cir.1976)); *Aerogroup International, Inc. v. Marlboro Footworks, Ltd.,* 956 F.Supp. 427, 433 (S.D.N.Y.1996) (same). Trademark usage is not, however, dependent on the occurrence of a sale as mere advertisement can constitute actionable use of a trademark and such usage occurs wherever the trademark has its effect on customers. *Hard Rock Cafe International (USA) Inc., v. Morton,* 1999 WL 717995, *26 (S.D.N.Y. 1999) (citing *Major League Baseball Properties, Inc. v. Sed Olet Denarius, Ltd.,* 1990 WL 151094, at *3 (S.D.N.Y.1990), and *Honda Associates Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 889 (S.D.N.Y. 1974)).

The New York Court of Appeals has construed § 302(a)(2) as requiring that the defendant be physically present in New York when the wrongful conduct on which the alleged tort is predicated is performed, specifying that "[t]he mere occurrence of the injury in this State certainly cannot serve to transmute an out-of-state tortious act into one committed here within the sense of the statutory wording." *Feathers v. McLucas,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68, 70 (N.Y.1965). At issue in *Feathers, supra,* was whether there was personal jurisdiction in New York over the Kansas manufacturer of a defective tank containing highly flammable liquified propane gas and which, while in transit from Pennsylvania to Vermont, exploded in New York causing serious personal injuries to

the plaintiffs in that state. *Feathers, supra,* at 76. The Court of Appeals stated that "[i]t certainly does not follow that, if the 'place of wrong' for purposes of conflict of laws is a particular state, the 'place of the commission of a tortious act' is also that same state for purposes of interpreting a statute conferring jurisdiction, on that basis, over nonresidents." *Feathers, supra,* at 79, 261 N.Y.S.2d 8. The court held that any alleged tortious act by the defendant tank manufacturer occurred in Kansas and, accordingly, declined to extend jurisdiction over the defendant under § 302(a)(2) on the basis that the defendant was not physically present in New York when the accident occurred. *Id.* at 80, 261 N.Y.S.2d 8. The court subsequently adhered to its holding in *Feathers* in *Kramer v. Vogl,* 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159, 161–62 (1966) (holding no jurisdiction under § 302(a)(2) over Austrian defendant where defendant was not in New York when agreement on which fraud action was based was made), and *Platt Corp. v. Platt,* 17 N.Y.2d 234, 270 N.Y.S.2d 408, 217 N.E.2d 134, 135–36 (1966) (holding court was without jurisdiction under § 302(a)(2) in action alleging breach of fiduciary duty predicated on the failure of a non-domiciliary director of a New York corporation to leave Florida to attend director's meeting and perform other director's duties as defendant was not within New York when alleged tortious act was committed).

The Second Circuit recently relied on *Feathers, supra,* in a federal trademark infringement case based on use of a registered trademark which appeared in an Internet address for defendant's passive Internet web site. Specifically, in *Bensusan Restaurant, supra,* the court declined to find jurisdiction under § 302(a)(2) in New York over a Missouri defendant who created a passive Internet web site advertising "The Blue Note," a jazz club located in Columbia, Missouri with the same name as a jazz club in New York City which had registered the name as a trademark in 1985. *Bensusan Restaurant, supra,* at 26. The Missouri Blue Note's web site contained a disclaimer indicating it should not be confused with the New York Blue Note club. *Id.* at 27. The web site also contained information regarding future events at the Columbia jazz club and a ticket box office telephone number, although tickets could not be purchased over the Internet. *Id.* The Second Circuit held that although use of the defendant's web site may have caused injury to the New York City Blue Note, New York lacked personal jurisdiction under § 302(a)(2) over the Missouri defendant, concededly not present in New York when the web site was created. *Id.* at 29. Noting that some district courts had reached contrary conclusions in similar cases involving trademark infringements based on Internet web sites, the court stated that "[i]n the absence of some indication by the New York Court of Appeals that its decisions in *Feathers* and *Platt* ... no longer represent the law of New York, we believe it would be impolitic for this Court to hold otherwise." *Id.* Compare *Pilates Inc. v. Pilates Institute, Inc.,* 891 F.Supp. 175, 182 (S.D.N.Y.1995) (holding in the context of trademark infringement action based on Arizona corporation's advertisement of products in New York that a "more accurate interpretation of both the language of § 302(a)(2) and of the Court of Appeals in *Feathers* is that they require, as a prerequisite to the exercise of personal jurisdiction, that the tort which is the subject of the dispute have been committed in the state.").

With regard to the instant case, there is no indication that Superior's web site was created anywhere other than Canada or that Superior was present in New York when the infringement was observed. Superior thus did not commit the alleged wrongful acts while physically present in New York. As such, Superior is not subject to personal jurisdiction in New York under N.Y. CPLR § 302(a)(2).[7]

---

7. As the court sustains jurisdiction based on § 302(a)(3), it is not necessary to consider

### 3. *N.Y. CPLR § 302(a)(3)*

In 1966, the New York Legislature enacted N.Y. CPLR § 302(a)(3) to close the "substantial gap in New York's possible exercise of jurisdiction over non-residents" created by the inapplicability of N.Y. CPLR § 302(a)(2) to torts performed by non-residents outside New York yet causing injury within New York. *Bensusan Restaurant, supra,* at 28. Pursuant to § 302(a)(3), "New York courts may exercise jurisdiction over a non-domiciliary who commits a tortious act without the state, causing injury to a person or property within the state," subject to several limitations delineated in sub-divisions (i) and (ii). *Id.* The parties do not dispute that the four counts of the Complaint are based on alleged tortious conduct arising from trademark infringement.

██ Specifically, jurisdiction under § 302(a)(3)(i) requires that the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state." *Ingraham v. Carroll,* 90 N.Y.2d 592, 665 N.Y.S.2d 10, 687 N.E.2d 1293, 1295 (1997) (quoting N.Y. CPLR § 302(a)(3)(*l* )). This provision is thus limited "only to those [defendants] 'who have sufficient contacts with this state so that it is not unfair to require them to answer in this state for injuries they cause here by acts done elsewhere.' " *Ingraham, supra,* (quoting 12th Ann. Report of N.Y.Jud.Conf. at 343). Although § 302(a)(3)(*l* ) does not require the quantity of contacts necessary to meet the "doing business" test for jurisdiction under § 301, "it does, logically, require something more that the 'one shot' single business transaction" described under § 302(a)(1). *Ingraham, supra,* (citing 12th Ann. Report of N.Y.Jud.Conf., at 343). Where the defendant's asserted contacts with the state are based on sales resulting in substantial revenue, "hard evidence" of that revenue is required. *Ball v. Metallurgie Hoboken–Overpelt, S.A., supra,* at 200. Further, to sustain personal jurisdiction under § 302(a)(3)(*l* ) based on a demonstration that the defendant derives substantial revenue from sales in New York, the plaintiff must also show that the associated goods are "used or consumed in New York." *Id.*

As discussed, in this case, Superior submitted an affidavit by its President, Mr. Willms, detailing the lack of regularly business contacts between Superior and New York. Discussion, *supra,* at 210–11. Roberts–Gordon asserts in opposition that Superior's contacts with New York support finding Superior transacts business in New York within the meaning of § 302(a)(1) through Superior's interactive web site which may be accessed from computers located in New York, Superior's direct dealings with "end-user" customers in New York and, indirectly, through Superior's authorized representatives who are located in New York. In particular, Roberts–Gordon maintains Superior's web site provides viewers, in New York and elsewhere, with the ability to directly contact and place orders with Superior over the Internet. Plaintiff's Memorandum of Law at 11. Superior also allegedly directly sold its products to PTI in Orchard Park, New York for installation at the Buffalo International Airport. *Id.* at 11. Roberts–Gordon further maintains that Superior's web site's references to its "authorized representatives" demonstrates Superior has distributors who conduct business in New York on its behalf. *Id.* at 12.

However, absent from the information submitted by Roberts–Gordon to establish Superior's presence based on conducting business in New York is any "hard evidence" indicating the amount of revenue such activities generated based on sales in New York. In fact, the only indication in

whether jurisdiction could conceivably be predicated under § 302(a)(2) by finding the alleged infringement was committed in New York through the Internet functioning as Superior's agent.

the record relating to the revenue Superior derived from its sales in New York are two statements in which Roberts–Gordon estimates that Superior's sales to PTI represented 30% of Superior's total income in one particular, albeit unspecified, year, Joseph Discovery Affidavit at 4, n 4; Plaintiff's Memorandum of Law in Support of Sanctions at 4, and two exhibits indicating Superior's sales to New York customers exceeded $500,000 in 1996. Dines Affidavit, Exhibits C and D. However, without "hard evidence" supporting this information the court cannot determine whether the proportion of Superior's revenue from New York sales qualifies as substantial. *Ball, supra,* at 200 (holding there was no jurisdiction over Belgium defendant under § 302(a)(3)(*l*) where plaintiff submitted no evidence indicating what proportion of defendant's sales were to customers for use in New York). Although such evidence may be found through discovery, the court need not order discovery at this time as it finds personal jurisdiction over Superior under N.Y. CPLR § 302(a)(3)(ii).

 To establish jurisdiction under N.Y. CPLR § 302(a)(3)(ii), "a plaintiff must demonstrate that the nonresident tortfeasor: (1) 'expects or should reasonably expect the act to have consequences in the state'; and (2) 'derives substantial revenue from interstate or international commerce.'" *Ingraham, supra,* at 1295 (quoting N.Y. CPLR § 302(a)(3)(ii)). The first prong is a "foreseeability requirement" that "relates to forum consequences generally and not to the specific event which produced the injury within the state." *Fantis Foods, Inc. v. Standard Importing Co.,* 49 N.Y.2d 317, 425 N.Y.S.2d 783, 402 N.E.2d 122, 126, n. 4 (1980). As a nonresident tortfeasor must expect or have reason to expect that tortious activity outside New York will have direct consequences in New York, the purpose of the first prong is to ensure a sufficient link between the defendant and New York such that it is reasonable to expect the defendant to come to New York to answer for alleged tortious conduct committed elsewhere. *Ingraham, supra,* at 1295.

In the instant case, the record supports finding that Superior conceded that use of selected Roberts–Gordon trademarks as metatags in the design and operation of Superior's web site containing information directed to potential customers throughout North America, including New York where Roberts–Gordon maintains its principal place of business and allegedly incurred statutory damages, was in violation of federal trademark laws. Print-out of Superior's Web Site dated March 24, 1999, Exhibit I to Dines Affidavit ("Our distributors provide sales coverage throughout North America with projects ongoing from Texas to Northern Canada.") Specifically, in letters by Superior's attorneys responding to correspondence from Roberts–Gordon's attorneys regarding the claimed infringement, Superior assured Roberts–Gordon that the offending metatags, leading to Superior's website containing information directed to customers throughout North America, had been removed. Complaint, Exhibit B. Accordingly, the first element for jurisdiction under § 302(a)(3)(ii) is met.

The second, "commerce" element does not, unlike § 302(a)(3)(*l*) require any direct contact with New York. *Ingraham, supra,* at 1296. Rather, the second prong of the statute "narrows the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State, but 'whose [non-resident] business operations are of a local character.'" *Ingraham, supra,* (quoting 12 Ann. Report of N.Y.Jud.Conf., at 342–43). Simply put, the second prong is a "bigness requirement", the purpose of which is to ensure that the defendant is "economically big enough to defend suit in New York." *Ingraham, supra,* at 1296 (internal citations omitted).

That the second prong has also been satisfied in the instant case is evident from

a copy of a computer printout of Superior's web site submitted by Roberts–Gordon in opposition to the motion. Specifically, as of March 24, 1999, the web site referred to Superior as offering "a broader product range with more capability than any other North American manufacturer" and stressing that it had distribution capacity to "provide sales coverage throughout North America with projects ongoing from Texas to Northern California." Superior Web site, attached as Exhibit I to Dines Affidavit. Notably, Superior does not dispute that Exhibit I is an accurate rendition of its web site. Moreover, as noted, it is also the case that between 1996 and 1997, Superior has shipped approximately $500,000 of its products to customers in New York. Dines Affidavit, Exhibits C and D. Accordingly, the court finds that Superior meets the second element for jurisdiction under § 302(a)(3)(ii).

Superior is, therefore, subject to personal jurisdiction in New York under N.Y. CPLR § 302(a)(3)(ii).

### 4. *Due Process*

■ As the court has found that § 302(a)(3)(ii) permits it to exercise personal jurisdiction over Superior with respect to the alleged trademark infringement, the court next determines whether the exercise of such jurisdiction comports with due process. *Bensusan Restaurant, supra,* at 27. The exercise of personal jurisdiction will not offend due process requirements provided the defendant has "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (citing *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940), and *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). In determining whether sufficient minimum contacts exist, the court considers " 'the relationship among the defendant, the forum, and the litigation.'" *Ker-*

*nan v. Kurz–Hastings, Inc.,* 175 F.3d 236, 242 (2d Cir.1999) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)).

■ Minimum contacts are established if the plaintiff demonstrates that the cause of action arises out of or relates to the defendant's contacts with the forum state, and that the defendant "purposefully availed" himself of the privileges of doing business in New York such that he could foresee being "haled into court" there. *Kernan, supra,* at 242 (internal citations and quotations omitted). However, where a case involves torts that create a cause of action in the forum state, although the tort is based on conduct occurring without the forum state, the "purposeful availment" threshold is lower and it is sufficient that the defendant's purpose was to target the forum state and its residents. *Digital Equipment Corp. v. AltaVista Technology, Inc.,* 960 F.Supp. 456, 469–70, 471–72 (D.Mass.1997) (citing *Calder, supra,* at 788, 104 S.Ct. 1482).

In this case, Roberts–Gordon's claims arise out of Superior's contacts with the forum state through the Internet as the harm incurred arose from Superior's alleged trademark infringement cognizable at Roberts–Gordon's principal place of business, and other Internet users including prospective customers, in New York. *See Bensusan, supra,* at 29. Accordingly, Superior's contact with New York through its web site constitutes sufficient minimum contacts with New York to find that Superior "purposefully availed" itself of New York law. *Calder, supra,* at 788, 104 S.Ct. 1482; *Digital Equipment, supra,* at 469–70.

■ Due process considerations also require that the assertion of jurisdiction over a nonresident defendant comport with "traditional notions of fair play and substantial justice" such that jurisdiction over the defendant is "reasonable" given the circumstances of the case. *Kernan, supra,* at 244 (internal citations omitted). "Rea-

sonableness" is determined based on five factors including

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial's system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering social substantive policies.

*Kernan, supra,* at 244 (citing *Metropolitan Life Insurance Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 568 (2d Cir.1996)).

■■■ As to the first factor, the court must consider whether exercising personal jurisdiction would place any "unique burdens" on Superior who would be forced to defend itself in a foreign legal system. *Kernan, supra,* at 244 (citing *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). The court finds that requiring Superior to defend this action in New York would impose little burden given the proximity of its location in Ontario, Canada to Buffalo, New York. That Superior maintains a consultant who lives in Orchard Park, New York and admittedly maintains at least two "authorized representatives" to facilitate business in New York further indicates that geography will have little effect on Superior's ability to defend an action in this court. The first factor therefore weighs in favor of finding personal jurisdiction over Superior.

The second factor requires the court to consider what law will be applied in resolving the dispute sued upon. *Kernan, supra,* at 244. In this case, in addition to federal claims asserted under the Lanham Act (Counts I and II), and the Federal Trademark Dilution Act (Count IV), Roberts–Gordon also asserts claims based on New York law, including violations of New York's trademark act, N.Y.Gen.Bus.Law § 360–k (Count I), New York common law

of unfair competition (Count III), and New York's antidilution law, N.Y.Gen.Bus.Law §§ 360 *et seq.* (Count IV). The need to resolve questions of law pertaining to the forum state and, in this case, United States law rather than Canadian, "weighs in favor of the reasonableness of the court's exercise of jurisdiction over [Superior]." *Kernan, supra,* at 244.[8]

The third factor requires the court to consider the burden placed on the plaintiff if it were determined that the court could not exercise personal jurisdiction over the defendant. *Kernan, supra,* at 245. In this case, if Superior is not subject to personal jurisdiction in New York, the only other forum in which Roberts–Gordon could sue Superior would be in Ontario. Although such result would not place any more of a geographical burden on Roberts–Gordon than Superior faces by defending this action in New York, it would require application of both federal and New York law by a Canadian court. This factor thus weighs in favor of a finding of personal jurisdiction over Superior in New York. *See Kernan, supra,* at 245.

A primary consideration under the fourth factor is the location of witnesses and evidence. *Kernan, supra,* at 245 (*citing Metropolitan, supra,* at 574). Much of the evidence of Superior's alleged trademark violation is likely to be documentary in nature and, as discussed with regard to the first factor, given the proximity of Ontario, Canada to New York, geography should present only a minimal inconvenience to any potential defense witnesses. Accordingly, the fourth factor weighs in Roberts–Gordon's favor.

The fifth and final factor requires the court to "consider the common interests of the several states in promoting substantive policy issues." *Kernan, supra,* at 245 (citing *Metropolitan Life, supra,* at 575). Here, neither party has suggested that any particular substantive social policy would be either furthered or undermined

---

**8.** Superior does not assert that Canadian law would apply to this action.

by this court's exercise of personal jurisdiction over Superior. However, both Ontario and New York have mutual interests in assuring that their respective residents compete fairly as they engage in transnational competition. Accordingly, this factor weighs in favor of neither party. *Kernan, supra,* at 245.

Therefore, the court finds that exercising personal jurisdiction over Superior pursuant to N.Y. CPLR § 302(a)(3)(ii) comports with due process requirements. Accordingly, Superior's motion to dismiss should be DENIED.

### 2. *Motion for Sanctions*

 Roberts–Gordon has moved for sanctions against Superior arguing that Superior's motion to dismiss for lack of personal jurisdiction was predicated on false and misleading statements contained in an affidavit submitted by Willms. Plaintiff's Notice of Motion for Rule 11 Sanctions. Specifically, Roberts–Gordon maintains that in an affidavit submitted in support of dismissal for lack of subject matter jurisdiction, Willms falsely stated that Superior "has no end-user customers in New York State" and that Superior's distributors in New York "are not authorized to contract on behalf of the company," and generally denied that Superior had sufficient contacts with New York to sustain jurisdiction over it. Plaintiff's Memorandum of Law in Support of Sanctions at 1–2. Superior argues against the motion for sanctions that its motion to dismiss for lack of jurisdiction was well-founded given that the Complaint alleges personal jurisdiction specifically on the basis that Superior does business in New York through its interactive web site on the Internet and its New York distributors. Sullivan Affidavit II, ¶ 4.

Rule 11 sanctions "shall be imposed when it appears that a competent attorney could not form the requisite reasonable belief as to the validity of what is asserted in a pleading or motion." *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir.

1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). *See also Stern v. Leucadia National Corp., LNC,* 844 F.2d 997, 1005 (2d Cir.1988) (sanctions imposed where, after reasonable inquiry, a competent attorney could not have a reasonable belief that the pleading is well grounded in fact and is warranted by existing law). A violation of Rule 11 requiring the imposition of sanctions occurs "where it is patently clear that a claim has absolutely no chance of success." *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). A subjective claim of good faith does not provide a "safe harbor" from the threat of this rule. *Eastway Construction Corp., supra,* at 253.

In this case, the court finds that sanctions are not warranted. In particular, the record supports finding that the motion was not frivolous when made as the Complaint alludes to jurisdiction based on the presence of Superior's interactive web site and distributors in New York. First, as discussed, even if discovery revealed that Superior's distributors in New York were its authorized representatives, that fact would be insufficient to find personal jurisdiction under § 301 absent a demonstration that the representatives were agents of Superior, *Landoil, supra,* at 492, which, at the time of Superior's motion, has neither been asserted nor yet established. Second, Roberts–Gordon framed both its Complaint and response to the motion to dismiss as if § 301 was the primary ground on which personal jurisdiction was asserted and mentions § 302(a)(3)(ii), the sole ground on which the court has found jurisdiction in New York, only briefly. *See* Plaintiff's Memorandum of Law at 13–14. Third, the court's research has revealed no other case in which jurisdiction under § 302(a)(3)(ii) in New York was found based on an alleged trademark infringement occurring over the Internet, an important factor given the rapidly evolving nature of the Internet as a jurisdictional

element. *See Bensusan, supra,* at 27–28. Indeed, in *Bensusan,* the Second Circuit declined to find jurisdiction under § 302(a)(3)(ii) based solely on the maintenance of a passive web site.

Accordingly, Superior's attorney had a good faith basis for the motion filed and Roberts–Gordon's motion for Rule 11 sanctions is DENIED.

## *CONCLUSION*

Based on the following, Defendant's motion to dismiss (Docket Item No. 3) should be DENIED and Plaintiff's cross-motion for discovery (Docket Item No. 7) is DISMISSED as moot. Alternatively, Plaintiff's cross-motion for discovery (Docket Item No. 7) is GRANTED and Defendant's motion to dismiss (Docket Item No. 3) should be continued. Plaintiff's motion for sanctions (Docket Item No. 16) is DENIED.

SO ORDERED as to Plaintiff's cross-motion for discovery and its motion for sanctions.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

February 4, 2000.