**John BASSILI, Ph.D., and Duece Industries, Ltd., Plaintiffs,**

v.

**Victor CHU and Maxline, Defendants.**

**No. 02–CV–00585C(SR).**

United States District Court,
W.D. New York.

Dec. 24, 2002.

Getman & Biryla (David R. Koepsell, Esq., of Counsel), Buffalo, NY, for Plaintiffs.

Trutanich & Associates (Anthony M. Horaites, Esq., of Counsel), San Pedro, CA, for Defendants.

CURTIN, District Judge.

Plaintiffs brought this action seeking injunctive relief and damages for commercial defamation pursuant to the Lanham Act, 15 U.S.C. § 1125, and other common law and statutory provisions, and have moved for preliminary injunctive relief (Item 8). Defendants move to dismiss for lack of personal jurisdiction, or in the alternative to dismiss or transfer the action based on improper venue (Item 14). For the following reasons, defendants' motion to transfer venue is granted.

## BACKGROUND

Plaintiff John Bassili, Ph.D., is President and owner of Deuce Industries, Ltd., an Ontario corporation engaged in the business of importing and manufacturing tennis equipment, including racquet stringing machines marketed under the name "Silent Partner." The complaint alleges that Deuce Industries maintains a principal place of business at 221 Kenmore Avenue, Unit 106, Buffalo, New York (Item 1, ¶ 2), which is described by Mr. Bassili as a "principal place of distribution" for its stringing machine inventory (Item 8, Bassili Decl., ¶ 1). Defendant Victor Chu is a resident of Torrance, California, doing business as "Maxline," and is engaged in the business of manufacturing and selling tennis racquet stringing machines marketed under the name "Eagnas"

As alleged in the complaint, Maxline conducts its business entirely by mail order and Internet sales through its website at *www.eagnas.com*. The website has a section entitled "Racquet Stringing Machines Frequently Asked Questions (FAQ)." Plaintiffs claim that the FAQ section of defendants' website contains false, disparaging and defamatory statements about plaintiffs' Silent Partner "e.Stringer" model stringing machine, causing plaintiffs to lose revenues due to decreased purchase orders and inquiries. The complaint sets forth causes of action for intentional interference with prospective economic advantage, trade libel, and product disparagement, and seeks relief in the form of damages (including treble damages) and a "Lanham Act 43(a)" injunction.[1] Plaintiffs also seek preliminary injunctive relief ordering defendants to remove from their website the false statements regarding the e.Stringer, pending the outcome of this litigation.

Defendants move to dismiss the complaint for lack of personal jurisdiction, or in the alternative to dismiss or transfer the action to the United States District Court for the Central District of California based on improper venue. Argument of defendants' motion took place by telephone on November 22, 2002. The court directed further submissions on the factual and legal issues raised by the motion. These submissions were received by the court on December 18, 2002. For the following reasons, defendants' motion is granted to the

---

1.  Section 43(a) of the Lanham Act provides:

    **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

    **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

    **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

    shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

    15 U.S.C. § 1125(a).

extent it seeks transfer of venue to the United States District Court for the Central District of California.

## DISCUSSION

### I. Personal Jurisdiction

Personal jurisdiction over a non-domiciliary defendant in a diversity or federal question case [2] is determined by reference to the law of the state in which the court sits. *Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 27 (2d Cir.1997). On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir.1999). At the pleadings stage of a case, a plaintiff is required only to make a *prima facie* showing of jurisdiction. *Ball v. Metallurgie Hoboken–Overpelt S.A.,* 902 F.2d 194, 197 (2d Cir.) (discussing plaintiff's varying obligation to establish personal jurisdiction depending on procedural posture of the litigation), *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990). In determining whether the plaintiff has met this burden, the court must assume that all of the plaintiff's factual allegations are true, and "doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir.1993) (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985)).

When considering a motion to dismiss for lack of personal jurisdiction, the court must conduct a two-part inquiry. "First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 567 (2d Cir.1996), *quoted in Kernan,* 175 F.3d at 240.

Plaintiffs allege personal jurisdiction under N.Y.C.P.L.R. § 302, New York's "long-arm" statute, which provides as follows:

**Personal jurisdiction by acts of non-domiciliaries**

**(a) Acts which are the basis of jurisdiction.** As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

Specifically, plaintiffs allege long-arm jurisdiction under § 302(a)(1), based on de-

---

**2.** Plaintiffs allege both diversity of citizenship (28 U.S.C. § 1332) and federal question (Lanham Act) as jurisdictional bases.

fendants' transaction of business within New York State via the Internet. Alternatively, plaintiffs rely on § 302(a)(3)(ii), alleging tortious conduct (trade defamation) committed outside of New York causing injury to property located within the state. Each of these jurisdictional bases is examined separately below.

## A. C.P.L.R. § 302(a)(1): Transaction of Business in New York

■ Section 302(a)(1) confers jurisdiction over a defendant who "purposefully avails itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws," where the cause of action arises out of the subject matter of the business transacted. *Citigroup Inc. v. City Holding Company*, 97 F.Supp.2d 549, 564 (S.D.N.Y.2000). New York courts look to the totality of circumstances to determine whether the defendant has engaged in some purposeful activity in New York in connection with the matter in controversy. *Id.* (citing *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 457 & n. 5, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965)). A single transaction of business is sufficient to give rise to jurisdiction under C.P.L.R. § 302(a)(1), even where the defendant never enters the state, if the claim arises out of the transaction. *Id.*

Stated somewhat more succinctly, § 302(a)(1) "is a 'single act statute' and 'proof of one transaction in New York is sufficient to invoke jurisdiction, even [if] the [defendant] never enters the state, so long as the [defendant's] activities [in New York] were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Roberts–Gordon, LLC v. Superior Radiant Products, Ltd.*, 85 F.Supp.2d 202, 212–13 (W.D.N.Y.2000) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988); other citations omitted). Under this stan-

dard, "[i]f the defendant has 'transacted business' in New York, it is suable on any cause of action that arises out of the transaction." *Hoffritz*, 763 F.2d at 58, *quoted in Roberts–Gordon*, 85 F.Supp.2d at 213.

In this case, all of the activity engaged in by defendants giving rise to the tortious interference, trade libel, and product disparagement claims set forth in the complaint occurred via the Internet. The Second Circuit has made it clear that a court should not exercise personal jurisdiction over a defendant simply because the defendant maintains a website on the Internet which residents of New York may visit. *See Bensusan Restaurant Corp.*, 126 F.3d at 29; *see also Phat Fashions, L.L.C. v. Phat Game Athletic Apparel, Inc.*, 2001 WL 1041990, at *5 (S.D.N.Y. Sept. 7, 2001). Rather, courts must examine the "nature and quality of commercial activity that an entity conducts over the Internet." *K.C.P.L., Inc. v. Nash*, 1998 WL 823657, at *5 (S.D.N.Y. Nov. 24, 1998) (quotation marks and citations omitted).

Several cases have addressed the question of what type of Internet activity may be deemed as sufficient to support the exercise of long-arm personal jurisdiction over a non-domiciliary defendant. For example, upon examination of the emergent case law, the court in *Citigroup Inc.* noted:

> [T]he courts have identified a spectrum of cases involving a defendant's use of the internet. At one end are cases where the defendant makes information available on what is essentially a "passive" web site. This use of the internet has been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant. At the other end of the spectrum are cases in which the defendant clearly does business over the internet, such as where it knowingly and

repeatedly transmits computer files to customers in other states. Finally, occupying the middle ground are cases in which the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction. *Citigroup Inc.*, 97 F.Supp.2d at 565 (citations omitted).

The parties disagree over precisely which category defendants' website falls into. Plaintiffs allege that the site is "interactive, and includes a link through which visitors can order merchandise online through an interactive form" (Item 1, ¶ 6). Defendants, on the other hand, describe the site as "purely ... passive ... offer[ing] nothing more than information" (Item 14, p. 5). This distinction is not without importance, since (as noted in *Citigroup* and other cases), a defendant's maintenance of a "passive" website accessible to Internet users in New York, without any other discernible connection to the forum, has been held to be insufficient to constitute transaction of business in New York to justify exercise of personal jurisdiction under C.P.L.R. § 302(a)(1). *Cf. Citigroup Inc.*, 97 F.Supp.2d at 565 (citing cases); *see also Hsin Ten Enterprise USA, Inc. v. Clark Enterprises*, 138 F.Supp.2d 449, 456 (S.D.N.Y.2000) ("passive" websites, which primarily make information available to viewers but do not permit an exchange of information, do not confer personal jurisdiction).

Accessing defendants' website at *www.eagnas.com* indicates that the site is primarily informational, but also contains a link to Maxline's e-mail address, which may be utilized to order defendants' products.[3] As such, the site appears to fall somewhere into the middle category of "interactivity," permitting the exchange of information between the defendant and website viewers, and allowing viewers to place an order for merchandise by e-mail, but not providing downloadable order forms or the ability to securely transmit credit card or payment information. *See Student Advantage, Inc. v. International Student Exchange Cards, Inc.*, 2000 WL 1290585, at *4 (S.D.N.Y. Sept. 13, 2000) (exercising personal jurisdiction over defendant whose website permitted viewer to purchase product by providing payment and shipping information online).

In addition, Mr. Chu has advised the court that he has made "very limited" sales of his merchandise to buyers in New York, whether through orders placed by e-mail, regular mail, telephone or fax. Specifically, Mr. Chu states that his sales to New York customers represented approximately 3.5% of total sales during the year 2000, and approximately 2.5% of total sales during the year 2001 (Item 14, Chu Affirmation, ¶¶ 4, 6). Defendants contend that this limited business activity in New York is insufficient to support the court's exercise of jurisdiction in this case. Plaintiffs contend, on the other hand, that these sales confirm defendants' transaction of business in New York for the purpose of invoking personal jurisdiction under § 302(a)(1).

I do not find the parties' disagreement over the type of website or the extent of defendants' business dealings in New

---

**3.** The "Order in U.S.A." section of defendants' website provides as follows:

We do not have the special order forms. Just e-mail, call, fax or write to us and indicate which products you would like to order. To order, please call us at (* * *) * * *-* * * *, fax us at (* * *) * * *-* * * *, or e-mail to us at maxline@eagnas.com. Please provide us your name, address and telephone number, and let us know how would you like to ship it by air or by ground.

York material to the question of whether the exercise of jurisdiction would be appropriate under § 302(a)(1). Rather, upon examination of the totality of the circumstances presented to the court on this motion, I find that plaintiffs have not met their burden of demonstrating—nor have they alleged—that the causes of action set forth in the complaint (tortious interference, trade libel, and product disparagement) arose out of any transaction of business in New York, or are sufficiently related to the business transacted that it would not be unfair to deem them to have arisen out of the transacted business, and to subject the defendants to suit in New York under this section of the long-arm statute. *See Hoffritz for Cutlery,* 763 F.2d at 59; *see also Roberts–Gordon,* 85 F.Supp.2d at 213. (defendant's sales of de-icing products in New York not sufficiently connected to plaintiff's Internet trademark infringement claim to subject defendant to jurisdiction under § 302(a)(1)). Accordingly, the court turns its attention to plaintiff's alternative statutory basis for personal jurisdiction, C.P.L.R. § 302(a)(3)(ii).

### B. C.P.L.R. § 302(a)(3)(ii): Tortious Conduct Without the State Causing Injury to Property Within the State

By its terms, C.P.L.R. § 302(a)(3)(ii) establishes a basis for personal jurisdiction over an non-domiciliary defendant who commits a tortious act outside of New York that causes injury in New York, where the defendant (1) should reasonably expect its actions to have consequences in New York and (2) derives substantial revenue from interstate or international commerce. *See, e.g., Phat Fashions,* 2001 WL 1041990, at *6; *Roberts–Gordon,* 85 F.Supp.2d at 216. In the absence of any information or cited authority to the contrary, the court will assume for the purposes of this motion that

defendants' maintenance of its website in California containing allegedly defamatory information about plaintiffs' products constitutes commission of a tort outside of New York, *see, e.g., Cable News Network, L.P., L.L.L.P. v. GoSMS.com, Inc.,* 2000 WL 1678039, at *3 (S.D.N.Y. Nov. 6, 2000) (collecting cases), causing injury to plaintiffs within the State of New York. *Cf. Starmedia Network, Inc. v. Star Media Inc.,* 2001 WL 417118 (S.D.N.Y. April 23, 2001) (under New York law, injury "within the state" includes harm to business in New York market through lost sales or customers, as well as harm and threatened harm in New York market resulting from confusion and deception of New York computer users).

The first prong of the § 302(a)(3)(ii) inquiry is a "foreseeability" requirement that "relates to forum consequences generally and not to the specific event which produced the injury within the state." *Fantis Foods, Inc. v. Standard Importing Co.,* 49 N.Y.2d 317, 326 n. 4, 425 N.Y.S.2d 783, 402 N.E.2d 122 (1980). The test to determine whether a defendant expects or should reasonably expect its actions to have consequences within the state "is an objective rather than subjective one." *Allen v. Auto Specialties Mfg. Co.,* 45 A.D.2d 331, 333, 357 N.Y.S.2d 547 (3d Dep't 1974), *quoted in Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236, 241 (2d Cir.1999). As stated by the Second Circuit in the *Kernan* case:

New York courts have sought to avoid conflict with federal constitutional due process limits on state court jurisdiction by applying the "reasonable expectation" requirement in a manner consistent with United States Supreme Court precedent. Thus, New York courts have asserted that the simple likelihood or foreseeability "that a defendant's product will find its way into New York does not satisfy this element, and that purposeful availment of the benefits of the

laws of New York such that the defendant may reasonably anticipate being haled into New York court is required." *Kernan,* 175 F.3d at 241 (quoting *In re DES Cases,* 789 F.Supp. 552, 570–71 (E.D.N.Y.1992)); *see also Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988) (noting requirement under § 302(a)(3)(ii) that "the defendant's activities here were purposeful"); *Schaadt v. T.W. Kutter, Inc.,* 169 A.D.2d 969, 564 N.Y.S.2d 865, 866 (3d Dep't 1991) ("[I]t is not enough that a defendant foresaw the possibility that its product would find its way here; foreseeability must be coupled with evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market.").

In this case, defendants' use of the Internet for advertising and solicitation of sales, coupled with sales to New York customers representing approximately 3.5% of Maxline's total sales during the year 2000, and approximately 2.5% of its total sales during the year 2001, constitutes a sufficient *prima facie* showing that defendants purposefully availed themselves of the benefits of the laws of New York such that they should have reasonably anticipated being haled into court in New York to answer for the consequences of any allegedly defamatory statements published on their website. Accordingly, plaintiffs have met the first element for jurisdiction under § 302(a)(3)(Ii). *Cf. Lighting World, Inc. v. Birchwood Lighting, Inc.,* 2001 WL 1242277, at *3 (S.D.N.Y. Oct. 16, 2001) (finding 4% of total sales sufficient to confer jurisdiction under § 302(a)(3)(ii), but transferring case to California based on improper venue).

The second element, requiring a *prima facie* showing that defendants derive substantial revenue from interstate or international commerce, does not require any direct contact with New York. *Ingraham v. Carroll,* 90 N.Y.2d 592, 598, 665 N.Y.S.2d 10, 687 N.E.2d 1293 (1997). Rather, the second prong of the statute "narrows the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State, but whose business operations are of a local character." *Id.* at 599, 665 N.Y.S.2d 10, 687 N.E.2d 1293 (internal quotation and citation omitted). Simply put, the second prong is a "bigness requirement," designed to ensure that the defendant is "economically big enough to defend suit in New York." *Id.* (quoting Siegel, NEW YORK PRACTICE § 88, at 136 [2d ed] ).

Again, the information in the record, although scant at this pre-discovery stage of the proceedings, is sufficient to meet plaintiffs' *prima facie* burden on this element of the § 302(a)(3)(ii) inquiry. Specifically, based on the information provided by Mr. Chu in his affirmation, and the average price of defendants' products as listed on the website, plaintiffs estimate that defendants have received approximately $30,000 from New York sales which represent approximately 3% of overall sales during the years 2000 and 2001. In addition, the website contains some thirty-four printed pages of testimonials from defendants' customers in the United States and other countries. Taken together, this information suggests that defendants derive substantial revenue[4] from interstate and international commerce.

According to this analysis, plaintiffs have made a sufficient showing to establish that the defendants are subject to personal jurisdiction in this action under New York's long-arm statute. Ordinarily, at this point in the analysis the court would assess whether the assertion of jurisdiction comports with the requirements of due

---

4.  Based on the estimated figures, upwards of $500,000 annually.

process. *See, e.g., Kernan,* 175 F.3d at 242–45; *Roberts–Gordon,* 85 F.Supp.2d at 217–19. However, beyond the fact that the scant record before the court contains little information necessary or helpful to this analysis (and as the following discussion makes clear), even if the exercise of personal jurisdiction over defendants comports with the requirements of due process, venue in the Western District of New York is improper.

## II. Venue

■ As the Lanham Act does not have its own venue provision, the general venue statute is applicable. *See Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir.1995). The pertinent venue statute, 28 U.S.C. § 1391(b), provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Defendants contend that venue of this action in the Western District of New York is improper, and seek dismissal or transfer to the Central District of California, where the case "could have been brought." 28 U.S.C. § 1406(a).[5]

Once an objection to venue has been raised, the plaintiff bears the burden of establishing that venue is proper. *See*

*D'Anton Jos, S.L. v. Doll Factory, Inc.,* 937 F.Supp. 320, 321 (S.D.N.Y.1996). In this regard, plaintiffs rely entirely on § 1391(a)(2), which allows an action to be venued in a district in which a substantial part of property that is the subject of the action is situated. According to plaintiffs, venue is appropriate in the Western District of New York because a substantial part of the stringing machine inventory subject to the product disparagement or trade defamation alleged to have occurred in this case is situated at its warehousing and distribution location on Kenmore Avenue.

Plaintiffs have not cited, nor has this court's research found, any authority for venue of a Lanham Act product disparagement action based solely on the location of the plaintiff's inventory in a district in which neither party resides. In this court's view, the fact that the plaintiffs' products might be found in a warehousing or distribution facility located within the district, and that the dissemination of false information over the Internet may cause a diminution in value of the inventory, is simply too tenuous a connection with the forum to require a California resident to defend a product disparagement action here. *Cf. Woodke,* 70 F.3d at 985 (venue of Lanham Act claim improper based solely on the location of the ultimate effect of the violation).

■ In any event, defendants argue that even if venue is proper in the Western District of New York, the case should be transferred to the Central District of California "[f]or the convenience of the parties and witnesses in the interest of justice ...." 28 U.S.C. § 1404(a). This section is a statutory recognition of the common law

---

**5.** Section 1406(a) provides in full: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

doctrine of *forum non conveniens* as a facet of venue in the federal courts. *Wilshire Credit Corp. v. Barrett Capital Management Corp.*, 976 F.Supp. 174, 180 (W.D.N.Y.1997) (citing 1A James W. Moore et al., MOORE'S FEDERAL PRACTICE ¶ 0.345[3.–1] ). The primary goal of § 1404(a) is to protect litigants, witnesses and the public against unnecessary inconvenience and expense. *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960); *see also Lencco Racing Co., Inc. v. Arctco, Inc.*, 953 F.Supp. 69, 71 (W.D.N.Y.1997).

It is well established that the determination whether to transfer venue lies within the broad discretion of the district court, based upon "notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir.1992). The party seeking transfer bears the burden of "making out a strong case . . . .," *Filmline (Cross–Country) Productions v. United Artists*, 865 F.2d 513, 521 (2d Cir.1989), by demonstrating that, under all of the circumstances, the interests of justice and of the parties will be better served by the transfer. *See Delaware Credit Corp. v. Aronoff*, 1992 WL 170896, at *4 (W.D.N.Y. July 10, 1992). However, this burden is less stringent than under the former doctrine of *forum non conveniens* since transfer under § 1404(a) does not result in dismissal. *Id.;* *see also Wilshire Credit Corp.*, 976 F.Supp. at 180.

In determining whether transfer of venue is warranted "for the convenience of the parties and witnesses [and] in the interest of justice," courts generally consider several factors, including (1) the weight accorded the plaintiff's choice of forum, (2) the place where the operative facts took place, (3) the convenience of the parties, (4) the convenience of the witnesses, (5) the availability of process to compel unwilling witnesses, (6) the location of relevant documents and the relative ease of sources of proof, and (7) trial efficiency and the interests of justice. *Balaban v. Pettigrew Auction Co., Inc.*, 1997 WL 470373, at *2 (E.D.N.Y.1997); *see also Wilshire Credit Corp.*, 976 F.Supp. at 181. The court now turns to an application of these factors to this case, as presented in the pleadings and other documents submitted in connection with this motion.

Generally, the plaintiff's choice of forum is entitled to "substantial weight," unless the plaintiff chooses a foreign forum and the cause of action bears little relation to the chosen forum. *Verizon Online Services, Inc. v. Ralsky*, 203 F.Supp.2d 601, 623–24 (E.D.Va.2002); *see also Coker v. Bank of America*, 984 F.Supp. 757, 766 (S.D.N.Y.1997) (plaintiff's choice of forum entitled to lesser weight because it was not his place of residence); *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F.Supp. 81, 96 (S.D.N.Y.1995) (deference accorded to plaintiff's choice of forum is diminished substantially where forum is neither plaintiff's home district nor the place where events or transactions underlying the action occurred).

In this case, plaintiffs' residence (and principal place of business) is in the Province of Ontario and, as the discussion above demonstrates, the claims of trade defamation and product disparagement bear little relation to the Western District of New York. As discussed, the only connection with the Western District is the location of plaintiffs' inventory at a distribution facility. In the absence of any authority for placing venue based solely on the location of inventory, plaintiffs' choice of forum is not entitled to substantial weight.

In addition, all of defendants' witnesses and documents with information pertinent to the matters set forth on defendants' website are located in California, and

plaintiffs have not identified any witnesses located in this district who would provide testimony relevant or material to the issues in this case. Considering the relative neutrality of the remaining factors in light of the information provided to the court on this motion, I find that the interests of justice and of the parties will be better served by the transfer of this action to the Central District of California which, the parties agree, is a district in which the action could have been brought for the purposes of 28 U.S.C. § 1406(a).

### CONCLUSION

For the foregoing reasons, defendants' motion (Item 14) is granted to the extent it seeks an order transferring this action based on improper venue. The Clerk of Court shall take the steps necessary to transfer the action to the Central District of California.

So ordered.