NEW YORK ACCESS BILLING, LLC; RCN Telecom Services, Inc.; Broadview Networks, Inc.; Broadview Networks Plus Acquisition Corp.; Essex Communications Corp.; Spectrotel, Inc.; Conversent Communications of New York, LLC; Conversent Communications of New Jersey, LLC; Conversent Communications of Massachusetts, LLC; Conversent Conversent Communications of Connecticut, LLC; Cablevision Lightpath, Inc.; and Starpower Communications, LLC, Plaintiffs;

v.

ATX COMMUNICATIONS, INC.; Corecomm Limited;ATX Licensing, Inc.; Corecomm New Jersey, Inc.; Corecomm Virginia, Inc.; ATX Telecommunication Services of Virginia, LLC;Corecomm Maryland, Inc.; and Corecomm New York, Inc., Defendants.

No. 1:03–CV–449.

United States District Court, N.D. New York.

Oct. 21, 2003.

Roland Fogel Koblenz & Petroccione, LLP, Albany, NY (Keith J. Roland, of counsel), for plaintiffs.

Goldberg Segalla LLP, Albany, NY (William J. Greagan, of counsel), Saul Krenzel & Associates Associates, Philadelphia, PA (Douglas Diaz, of counsel), for defendants.

### *MEMORANDUM–DECISION and ORDER*

HURD, District Judge.

## I. *INTRODUCTION*

Plaintiffs, local telephone service carriers and their billing agent, commenced this

action against ATX Communications, Inc. ("ATX Communications") and related entities, the toll service carrier, seeking damages for defendants' alleged failure to pay for their access to plaintiffs' service as required by state and federal tariffs. Defendants move to dismiss for lack of personal jurisdiction over two of the wholly owned entities of ATX Communications. The defendants also move to dismiss as against all defendants on improper venue grounds or, in the alternative, move to transfer the case to the Eastern District of Pennsylvania on *forum non conveniens* grounds. Finally, the defendants move for the case to be referred to the Federal Communications Commission ("FCC") based on the doctrine of primary jurisdiction. This matter was taken on submission without oral argument.

## II. *FACTS*

Plaintiffs provide local exchange telephone services as Competitive Local Exchange Carriers ("CLECs") in various states including New York. The defendants are interexchange telecommunications carriers ("IXCs"), which provide toll call services in the states where the plaintiffs operate. When the plaintiffs' local exchange customers originate long distance calls using the defendants' long distance toll service a carrier fee is incurred.[1] The plaintiffs provide the defendants with carrier access service, which allows the toll calls to be originated from, or terminated to, the plaintiffs' local customers. In other words, the CLECs charge the long-distance company for the use of their local carrier lines.

The rates charged by the CLECs for originating and terminating intrastate carrier access service are set forth in tariffs filed with, and approved by, state public utility commissions. The rates charged for originating and terminating interstate carrier access are either set forth in tariffs filed with the FCC or posted on carrier websites as authorized by, and in accordance with, FCC rules. For the transactions involved here, IXCs could not originate a toll call, or terminate a toll call in a distant city, unless they obtained originating and terminating carrier access from the CLECs.

Each of the plaintiffs has a Certificate of Public Convenience and Necessity ("CPCN") to operate as CLECs in New York, among other states, and provide intrastate and interstate carrier access in those states pursuant to the applicable state and FCC tariffs. Plaintiff New York Access Billing has its principal offices in Albany, New York. Plaintiff Broadview Networks, Inc. is a New York corporation with its principal offices in New York, New York. Broadview Network Plus Acquisition Corp. is a Delaware corporation with its principal offices in New York, New York. Plaintiff Essex Communications Corp. is a New York corporation with a principal office in New Rochelle, New York. Plaintiff Cablevision Lightpath, Inc. is a Delaware corporation with its principal place of business in Hicksville, New York. The remaining plaintiffs are incorporated in and have their principal places of business in states other than New York.

The defendant ATX Communications, Inc. is a Delaware corporation with its principal place of business in Pennsylvania. The following companies operate as wholly owned entities of ATX Communications, Inc.: ATX Licensing, Inc. is a Delaware corporation with its principal place of busi-

---

1. New York Access Billing is the billing agent for each of the CLECs. New York Access Billing analyzes the call records of the CLECs and issues the appropriate bill for carrier access services to the appropriate IXC.

ness in Pennsylvania; CoreComm New Jersey, Inc. is a Delaware corporation with its principal place of business in New York; CoreComm Virginia, Inc. is a Delaware corporation with its principal place of business in New York; ATX Telecommunications Services of Virginia, LLC is a Virginia limited liability corporation with its principal place of business in Pennsylvania; CoreComm Maryland, Inc. is a Delaware corporation with its principal place of business in New York; CoreComm New York, Inc. is a Delaware corporation with its principal place of business in New York. ATX Communications, ATX Services, ATX Licensing and the CoreComm state entities share a unity of interests and ownership and operate as a single entity. All of the CoreComm state entities were incorporated by and are owned by ATX Communications.

The plaintiffs claim that despite the periodic monthly bills for carrier service provided by the plaintiffs to the defendants, that were issued by New York Access Billing on behalf of the plaintiffs, the defendants refused to pay the access charges due. In *Count I* of the complaint, plaintiffs allege that the defendants violated the FCC tariffs and website postings that require the payment of late fees and overdue balances. The plaintiffs claim that such tariffs and website postings are legally enforceable and constitute an enforceable agreement between the individual plaintiffs and any defendant using the services.

*Count II* of the complaint is the same as *Count I* but the alleged violations occurred with respect to the applicable state tariffs. *Count III* is a breach of contract claim in that the terms of the access tariffs filed with the FCC and the state regulatory agencies constitute valid and enforceable contracts between the CLECs and the IXC which accepts service as governed by the tariffs and website postings. *Count IV*

of the plaintiffs' complaint alleges that because the defendants have failed to object to or dispute any part of the bills, they have explicitly or implicitly accepted such bills as correct. *Count V* of the complaint alleges a violation of Federal Communications Act § 202 which provides that it is unlawful for any common carrier to engage in unjust discrimination practices. Plaintiffs allege unjust discrimination occurred as a result of defendants making payment to other CLECs as required by the tariffs, but refusing to make proper payments to the plaintiffs. The plaintiffs seek monetary damages and attorneys' fees.

As noted above, defendants move to dismiss for lack of personal jurisdiction as to certain defendants, improper venue, and, in the alternative, to transfer venue on *forum non conveniens* grounds. The defendants argue that the plaintiffs failed to allege that the defendants CoreComm Virginia, Inc. or ATX Telecommunications Services of Virginia, LLC are subject to service of process under any New York law, that assertion of jurisdiction over the defendants in New York would not comport with the requirements of due process, that the Northern District of New York did not have general jurisdiction over the defendants ATX Telecommunications Services, LLC and CoreComm Virginia, Inc., and that the Northern District of New York does not have specific jurisdiction over defendant ATX Telecommunications Services of Virginia LLC or CoreComm Virginia, Inc.

The defendants further allege that venue in the Northern District of New York is improper because none of the parties reside in this district and only one of the twenty parties has its principal place of business in this district. The defendants contend that even if venue in the Northern District of New York was proper, the case should be transferred to the Eastern Dis-

trict of Pennsylvania on *forum non conveniens* grounds. Finally, the defendants claim that this matter should be referred to the FCC pursuant to the doctrine of primary jurisdiction.

## III. DISCUSSION

### A. Personal Jurisdiction

#### 1. New York's Long Arm Statute

■ The defendants' initial ground for dismissal is that the Northern District of New York does not have personal jurisdiction over the defendants. In determining whether the defendant is subject to personal jurisdiction in the Northern District of New York, an analysis of New York's long arm statute is required. New York's long arm statute provides in relevant part:

(a) As to a cause of action arising from any acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary . . . who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state . . . ; or

3. commits a tortious act without the state causing injury to person or property within the state . . .

N.Y. C.P.L.R. § 302(a) (McKinney 2001) ("CPLR"). Defendants contend that because ATX Telecommunications Services of Virginia, LLC is a Virginia Limited Liability Company with its principal place of business in Pennsylvania, and because it is not registered to do business in New York, the Northern District of New York has no jurisdiction over that entity. These facts, however, do not determine the exercise of personal jurisdiction. "Under [CPLR § 302], a single transaction of business is sufficient to confer jurisdiction, even if the defendant never entered New York, 'so long as the defendant's activities [in New York] were purposeful and there is a substantial relationship between the transaction and the claim asserted.' " *Motorola Credit Corp. v. Uzan*, 274 F.Supp.2d 481, 575 (S.D.N.Y.2003) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 198–99, 522 N.E.2d 40, 43 (1988)).

From the record it is clear that defendant ATX Telecommunications Limited has conducted sufficient business in New York so as to meet the CPLR § 302 test for long arm jurisdiction. Exhibit A of plaintiffs' complaint indicates that ATX Telecommunications Services, Limited incurred over $75,000 in interstate access charges in New York and almost $2,000 in intrastate access charges in New York. According to the affidavit of the chief financial officer of Access Billing, applying 2 cents per minute as the average rate, ATX used 3,770,000 access minutes and using 5 minutes as the average length of a toll call equals 754,000 calls in New York handled by ATX. The same affidavit maintains that numerous toll calls were "originated and/or terminated within the 518 and 315 area codes." (Pls.' Aff. at 4.)

Even though neither ATX Telecommunications Services of Virginia, LLC nor CoreComm Virginia, Inc. are incorporated in New York state nor have their principal places of business in New York state, there is sufficient evidence that they transacted purposeful business in the state of New York. There is also sufficient evidence that their failure to pay for the access charges incurred was a claim that arose out of transacting business in New York. ATX Telecommunications Services of Virginia, LLC and CoreComm Virginia, Inc. are, therefore, subject to personal jurisdiction in the Northern District of New York under New York's long arm statute.

## 2. Compliance with Due Process

■ After determining that the Northern District of New York may exercise personal jurisdiction over ATX Communications via New York's long arm statute, further analysis of whether such an exercise of long-arm jurisdiction comports with due process is required. The Second Circuit has held that:

> [f]or due process to be satisfied, two requirements must be met. First, the defendant must have "certain minimum contacts [with the forum] ... such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 152 (2d Cir.2001). Second, "the assertion of personal jurisdiction [must] comport with traditional notions of fair play and substantial justice—that is, ... it [must be] reasonable under the circumstances of the particular case." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriquez*, 305 F.3d 120, 129.

*Motorola Credit Corp. v. Uzan*, 274 F.Supp.2d at 576.

### a. Minimum Contacts Requirement

As to the first requirement, "it is well established that New York's long arm requirement of doing business is more restrictive than the requirement of minimum contacts." *Purdue Pharma L.P. v. Impax Laboratories, Inc.*, No. 02 Civ. 2803(SHS), 2003 WL 22070549, at * 4 (S.D.N.Y. Sept.4, 2003); *see Andrulonis v. United States*, 526 F.Supp. 183, 189 (N.D.N.Y.1981). Since it has been demonstrated that ATX Communications transacted business within the state of New York to meet the requirements of the long arm statute, ATX Communications likewise has sufficient minimum contacts with the state to satisfy the first prong of the due process test.

Furthermore, in order for ATX Communications to use 3,770,000 access minutes and be the toll carrier for 754,000 toll calls in New York, they would have to have such continuous and systematic contact with the state that a minimum contacts test would definitely be met. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

### b. Reasonableness Requirement

■ In assessing reasonableness inquiry, five factors are usually considered:

(1) the burden that the exercise of jurisdiction will impose on the defendant;

(2) the interests of the forum state in adjudicating the case;

(3) the plaintiff's interest in obtaining convenient and effective relief;

(4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and

(5) the shared interest of the states in furthering social substantive policies.

*Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 568 (2d Cir.1996).

The defendants claim that they would be burdened if they had to defend the lawsuit in New York because their witnesses and documents are located outside of the state. Defendants also claim that "only four of the twelve plaintiffs are New York residents" and "the majority of the monetary relief sought is based on carrier access charges in Pennsylvania, not New York." (Defs.' Mem. of Law at 8.) As to the third reasonableness factor, defendants claim that plaintiffs do not have an interest in obtaining New York as their forum because the majority of plaintiffs are not New York citizens and do not have their respective principal places of business in New York. As to the fourth factor, defendants claim most of the witnesses and

evidence will be located in Pennsylvania because that is where most of the carrier access charges were incurred. Finally, as to the fifth factor, defendants contend that Pennsylvania "would appear to have a greater interest than New York [in furthering social substantive policies] since most of the claimed access charges which are the subject of the litigation are attributable to that state." (Defs.' Mem. of Law at 9.)

The plaintiffs counter by claiming that "it would be far more efficient and cost effective to litigate the matter [in New York] where the defendants do business; where the witnesses who will provide technical testimony to support plaintiffs' claims are located; and the records upon which the claims are based are to be found." (Pls.' Aff. at 4.)

Considering the affidavits in the light most favorable to the plaintiff, and considering that the plaintiffs have established the requisite minimum contacts with the forum, an exercise of personal jurisdiction by the state of New York would, in fact, be reasonable. The burden on the defendant is outweighed by the other reasonableness factors in favor of the plaintiffs. New York has an interest in adjudicating the case because several of the plaintiffs *and defendants* have their principal places of business here; the plaintiffs have an interest in obtaining relief in New York as they do business here and their records and witnesses are located here.

As to the fifth factor, New York's interest in furthering social substantive policies is equal to that of Pennsylvania. Although the majority of debt incurred by ATX Communications is attributable to Pennsylvania, a significant portion of that debt is attributable to New York, and New York, therefore, has an interest in seeing that the plaintiffs receive damages if their claims against the defendants are proven.

Thus, because the defendants have sufficient minimum contacts with the forum and an exercise of jurisdiction would be reasonable, New York may exercise long arm jurisdiction over the defendants in this matter.

### B. *Venue*

The defendants second ground for dismissal is that venue in the Northern District of New York is improper because "none of the parties reside in this district and only one of twenty parties has its principal place of business in this district." (Defs.' Mem. of Law at 9.) Pursuant to venue provision § 1391(b) the case may be brought only in:

(1) a judicial district where any defendant resides, if all defendants reside in the same State;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Defendants claim plaintiffs' reliance on subsection two is erroneous as they argue that nowhere in plaintiffs' complaint did plaintiffs allege that a substantial part of events giving rise to the claim occurred in the Northern District of New York. "The plaintiff need not establish that the [Northern] District of New York has 'the most substantial contacts to the dispute; rather it is sufficient that a substantial part of the events occurred [here], even if a greater part of the events occurred elsewhere.'" *Rothstein v. Carriere*, 41 F.Supp.2d 381, 387 (S.D.N.Y. 1999) (quoting *Neufeld v. Neufeld*, 910 F.Supp. 977, 986 (S.D.N.Y.1996)). Accord-

ing to the billing summary of interstate and intrastate charges, the defendants incurred a substantial amount of charges in New York, second only to Pennsylvania. Furthermore, "a plaintiff does not have to prove that his or her chosen venue is the best forum for the action, a plaintiff need only demonstrate that the choice is a permissible one." *Reynolds Corp. v. National Operator Services, Inc.*, 73 F.Supp.2d 299, 306 (W.D.N.Y.1999). Venue in the Northern District of New York is therefore proper under 28 U.S.C. § 1391(b).

Since the instant case involves a dispute between corporations, § 1391(c) is also implicated. Section 1391(c) states that:

> In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State.

28 U.S.C. § 1391(c). Section 1391(c) would require ATX Communications to be subject to personal jurisdiction in the Northern District of New York as if it were a separate state.

■ It follows that:

> Since any state may legitimately exercise personal jurisdiction over a defendant to the extent that the defendant's contacts with the state are sufficient to comport with the requirements of due process ... a simple due process analysis should be applied in assessing the sufficiency of a defendant's contacts with one of the districts in a multi-district state pursuant to ... 1391(c).

*Smehlik v. Athletes & Artists, Inc.*, 861 F.Supp. 1162, 1169–1170 (W.D.N.Y.1994). It has been established that the defendants had sufficient contact with the state of New York to withstand the due process analysis thereby making them subject to personal jurisdiction in the Northern District of New York. Venue pursuant to § 1391(c) is therefore proper.

Thus, because venue in the Northern District of New York is proper under both sections 1391(b) and (c), this case should not be dismissed on improper venue grounds.

## C. Transfer on Forum Non Conveniens Grounds

■ The defendants argue that "even if venue in this district is proper, this case should nonetheless be transferred to Eastern District of Pennsylvania for the convenience of the parties and witnesses, and in the interest of justice." (Defs.' Mem. of Law at 11.) In determining whether transfer of venue is warranted, courts usually consider the following factors:

(1) the weight accorded to the plaintiff's choice of forum,

(2) the place where the operative facts took place,

(3) the convenience of the parties,

(4) the convenience of the witnesses,

(5) the availability of process to compel unwilling witnesses,

(6) the location of relevant documents and the relative ease of sources of proof, and

(7) trial efficiency and the interests of justice.

*Bassili v. Chu*, 242 F.Supp.2d 223, 232 (W.D.N.Y.2002). *Bassili* further maintains that, "generally, the plaintiff's choice of forum is entitled to substantial weight, unless the plaintiff chooses a foreign forum and the cause of action bears little relation to the chosen forum." *Id.*

Defendants base their argument on the fact that the Virginia entities of ATX Communications have no business connection with the Northern District of New York, none of the defendants reside in New

York, and witnesses with information pertinent to the litigation reside in Pennsylvania. (Defs.' Aff. at 2.) The fact remains, however, that the plaintiffs chose the Northern District of New York as their forum because a substantial part of their claim for damages arose from the defendants' business conduct in the state of New York and in the Northern District of New York. Furthermore, several of the plaintiffs and defendants have their principal place of business in New York so the location of relevant documents and convenience of witnesses weighs in favor of the plaintiffs' choice of forum.

In *Bassili*, the court transferred the case to the Central District of California based on the information that the plaintiff's only connection with the Western District of New York was the location of their inventory at a distribution facility. 242 F.Supp.2d at 232. Additionally, *all* of defendants' witnesses and documents with information pertinent to the litigation were located in California. *Id.* In the instant case, the plaintiffs and defendants have a far greater connection with the plaintiffs' chosen forum since New York is the location of relevant documents and witnesses, and the situs of the business conduct giving rise to the claim. The defendants' reliance on *Bassili* is therefore misplaced. Because the cause of action bears a significant relationship to the chosen forum, the plaintiffs choice should be respected. Venue, consequently, should not be transferred to the Eastern District of Pennsylvania on *forum non conveniens* grounds.

### D. Doctrine of Primary Jurisdiction

■ Defendants' final argument is that, pursuant to the doctrine of primary jurisdiction, the Northern District of New York should refer plaintiffs' claims relating to interstate access service regulated by the FCC to the FCC for adjudication. According to the Second Circuit Court of Appeals:

"[t]he doctrine serves two principal interests: consistency and uniformity in the regulation of an area which Congress has entrusted to a federal agency; and the resolution of technical questions of facts through the agency's specialized expertise, prior to judicial consideration of the legal claims".

*TCG New York, Inc. v. City of White Plains*, 305 F.3d 67, 74 (2d Cir.2002). In the same case, the Court of Appeals also found that the doctrine of primary jurisdiction has a relatively narrow scope. *Id.* at 75. The instant case is for breach of contract in that the plaintiffs' claim that the defendants failed to pay the access charges as required by state and federal tariffs. It simply requires a determination of whether the defendants did, in fact, fail to make the requisite payments to the plaintiffs. It does not require an in depth analysis of technical matters that would require agency expertise. The FCC has already determined which tariffs apply to interstate carrier service, it is not, however, necessary for the FCC to determine whether the defendants have failed to pay for such service.

The defendants base their argument for referral to the FCC on a case where the issue involved "the scope of permissible competition between the specialized carriers such as MCI and the existing carrier, AT & T." *See MCI Communications Corp. v. American Tel. & Tel. Co.*, 496 F.2d 214, 222 (3d Cir.1974). Because such a determination involved "the comparative evaluation of complex technical, economic, and policy factors, as well as consideration of the public interest," the court deferred to the FCC. *Id.* The instant matter requires no such analysis. This matter should not, therefore, be referred to the FCC.

### IV. CONCLUSION

Defendants failed to demonstrate that the Northern District of New York lacks personal jurisdiction; that venue in this

district would be improper; that the case should be transferred to the Eastern District of Pennsylvania on *forum non conveniens* grounds; or that, pursuant to the doctrine of primary jurisdiction, the case should be referred to the FCC.

Accordingly, it is

ORDERED that

1. Defendants' motion to dismiss for lack of personal jurisdiction is DENIED.

2. Defendants' motion to dismiss on improper venue grounds, or in the alternative, to transfer on *forum non conveniens* grounds, is DENIED.

3. Defendants' motion to dismiss based on the doctrine of primary jurisdiction is DENIED.

4. Defendants shall file and serve an answer to the amended complaint on or before November 10, 2003.

IT IS SO ORDERED.